UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

DENISE GARRETT,                                    :     Case No. 11-cv-00133-RRM-JO
                                                   :
              Plaintiff,                           :
                                                   :
       vs.                                         :
                                                   :
PROVIDENT LIFE and CASUALTY INSURANCE              :
COMPANY n/k/a UNUMPROVIDENT, INC.;                 :
JOHN DOES 1-5; ABC CORPORATIONS 1-5,               :
                                                   :
              Defendants.                          :
                                                   :
------------------------------------------------------------------- x

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE TESTIMONY AND/OR TO LIMIT DOCUMENTARY EVIDENCE AT TRIAL**

---

Peter J. Heck, Esq.
Kevin E. Barber, Esq.
**NIEDWESKE BARBER LLC**
98 Washington Street
Morristown, NJ  07960
Phone:  (973) 401-0064
              and
420 Lexington Avenue, Suite 300
New York, NY  10170
Attorneys for Plaintiff Denise Garrett

On The Brief:
      Peter J. Heck, Esq.
      Kevin E. Barber, Esq.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ......................................................................................................3

LEGAL ARGUMENT..............................................................................................................7

ADDITIONAL EVIDENCE IS NECESSARY AT THE BENCH TRIAL AND PROVIDENT LIFE'S MOTION SHOULD, THEREFORE, BE DENIED

A.   The Court's *De Novo* Review ..................................................................... 7

B.   Good Cause Exists to Consider Additional Evidence.................................... 8

CONCLUSION..................................................................................................................20

# TABLE OF AUTHORITIES

**Page**

**Cases**

Alexander v. Winthrop, Stimson, Putnam & Roberts, LLP, 497 F. Supp. 2d
429 (E.D.N.Y. 2007).....................................................................................................13, 14

Baird v. Prudential Ins. Co. of Am., 2010 U.S. Dist. LEXIS 100941,*29-30
(S.D.N.Y. Sept. 24, 2010), aff'd, 458 Fed. App'x 39, 40 (2d Cir. 2012) .....................18

Connors v. Conn. Gen. Life Ins. Co., 272 F.3d 127 (2d Cir. 2001) .............................11

Daniel v. UnumProvident Corp., 2008 U.S. App. LEXIS 1396, *5 (2d Cir.
Jan. 24, 2008).................................................................................................................19

DeFelice v. Am. Int'l Life Assurance Co., 112 F.3d 61 (2d Cir. 1997) ..............9, 11, 18

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989)......................................7, 8

Gosselin v. Sheet Metal Workers National Pension Fund, 2017 U.S. Dist.
LEXIS 123413 (E.D.N.Y. Aug. 4, 2017) .....................................................................11

Halo v. Yale Health Plan, Dir. of Benefits & Records, Yale Univ., 819 F.3d
42 (2d Cir. 2016)..........................................................................................................9, 10

Hobson v. Metro. Life Ins. Co., 574 F.3d 75 (2d Cir. 2009) ..........................................9

Hotaling v. Teachers Ins. & Annuity Ass'n of Am., 62 F. Supp. 2d 731
(N.D.N.Y. 1999) ..............................................................................................................20

Juliano v. Health Maint. Org. of N.J., Inc., 221 F.3d 279 (2d Cir.2000).......................9

Kinsler v. First Reliance Standard Life Ins. Co., 181 F.3d 243 (2d Cir. 1999)..............7

Krizek v. Cigna Group Ins., 345 F.3d 91 (2d Cir. 2003) ..............................................16

Krolnick v. Prudential Insurance Company of America, 570 F.3d 841 (7th
Cir. 2009)...........................................................................................................................8

Lijoi v. Continental Cas. Co., 414 F. Supp. 2d 228 (E.D.N.Y. 2006) ..........................12

Locher v. Unum Life Ins. Co. of Am., 389 F.3d 288 (2d Cir. 2004)..............9, 10, 11, 15

McDonnell v. First Unum Life Ins. Co., 2013 U.S. Dist. LEXIS 110361,
*37-38 (S.D.N.Y. Aug. 5, 2013)....................................................................................7, 8

ii

**Page**

Miller v. United Welfare Fund, 72 F.3d 1066 (2d Cir. 1995) ......................................14

Napoli v. First Unum Life Ins. Co., 78 Fed. App'x 787 (2d Cir. 2003) ..................14, 15

Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435 (2d Cir. 2006)..............9, 13

Richard v. Fleet Financial Group, Inc. Ltd. Employee Benefits Plan, 367 F. App'x 230 (2d Cir. 2010)............................................................................................14

Stepanski v. Sun Microsystems, Inc., 2011 U.S. Dist. LEXIS 156127, *61 (D.N.J. Dec. 11, 2011).....................................................................................................8

Tretola v. First Unum Life Insurance Company, 2015 U.S. Dist. LEXIS *14666 (S.D.N.Y. Feb. 6, 2015)........................................................................................17

Wedge v. Shawmut Design & Construction Group Long Term Disability Insurance Plan, 23 F. Supp. 3d 320 (S.D.N.Y. 2014) .......................................................14

**Statutes and Rules**

29 U.S.C. § 1001, et seq. (ERISA) ...........................................................................1

29 C.F.R. § 2520.102 ..........................................................................................5, 11

29 C.F.R. § 2560.503-1..........................................................................................10

## PRELIMINARY STATEMENT

The parties have agreed that Plaintiff, Denise Garrett's ("Ms. Garrett"), claim for long-term disability benefits is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.  The "agreement," however, does not support Defendant, Provident Life and Casualty Insurance Company's ("Provident Life"), argument that the Court can only consider the "administrative record"[1] it posits at the bench trial.  Nor does the case law Provident Life relies upon support such a limitation.

Provident Life's *in limine* motion confirms the undisputed fact that it did not adjudicate Ms. Garrett's long-term disability claim in accordance with ERISA-mandated claim procedures enacted by the Department of Labor ("DOL").  This undisputed fact constitutes "good cause" for the Court to consider additional evidence at the bench trial.  Provident Life's decision to ignore these claim-procedure regulations adversely impacted the development of a full and complete administrative record and it now must concede its inadequacy.   Nevertheless, Provident Life improperly attempts to circumscribe evidence at the bench trial.

Provident Life has agreed to the consideration of documents submitted by Ms. Garrett after the lawsuit was filed, (Db., pp. 2, 4) because of its ERISA transgressions.  Provident Life never obtained or reviewed the documents as it should have during the claim review process.  As such, they are not part of the administrative record in a true ERISA sense.  They are a portion of documents that Provident Life refused to review, despite its fiduciary duty, before Ms. Garrett was forced to file a lawsuit, four (4) years after Provident Life erroneously terminated her long-term

---

[1]    "Administrative record" is a term of art substituted for the phrase "claim file" in ERISA cases. Provident Life never maintained an administrative record and, in fact, produced a claim file based on its Bates-stamped designation in discovery.

disability benefits.   Moreover, counsel refused to permit Provident Life to consider these documents, on remand, after the lawsuit was filed.  Now, on the eve of trial, Provident Life tacitly admits its mistakes and attempts to create a fictitious "administrative record" to minimize the impact of its errors at the bench trial and preclude a full and fair review of Ms. Garrett's long-term disability claim.

Provident Life's errors have precluded, thus far, a full and fair review of Ms. Garrett's long-term disability claim as ERISA mandates.   Provident Life's fiduciary short-comings in obtaining all relevant evidence to fairly evaluate Ms. Garrett's claim should not shackle the Court when it addresses the issue during a bench trial.  The Court should be free to evaluate all relevant evidence deemed necessary to provide Ms. Garrett with a full and fair review of her disability claim.  Ms. Garrett deserves the opportunity to rebut the bases for Provident Life's erroneous claim determination under ERISA, a right Provident Life has deprived her of and seeks to avoid at the bench trial.  Ms. Garrett does not suggest a "full-blown" trial.  Instead, she seeks to confront the assumptive logic that Provident Life relied upon in its claim determination, based, in large part, upon the self-serving interpretation of surveillance material by its medical consultant, defense medical examiners and claim personnel.

Provident Life's agreement to the consideration of the "additional documents" contradicts the legal arguments proffered in support of its motion.  These documents are "additional evidence" that the Court properly considered when adjudicating the cross-motions for summary judgment and are admissible at the bench trial along with any other additional evidence the Court deems necessary to resolve disputed issues of material fact.

As part of its argument, Provident Life emphasizes again in a submission to the Court that it will not be able to present evidence of Ms. Garrett's guilty plea to petit larceny eight (8) years

2

after Provident Life terminated her long-term disability benefits. The inclusion of this statement is not altruistic. Instead, Provident Life continues to ring a bell with the Court, regardless of how the bench trial proceeds, for the consideration of this "additional evidence." This is particularly inappropriate absent any legal analysis and given the relief sought by its motion.

Of course, Provident Life's counsel's suggestion would preclude the Court from considering the Regulatory Settlement Agreement ("RSA") that Provident Life and its affiliated companies entered into with the DOL, forty-eight (48) states and other public entities concerning its unfair claim handling practices in or about November 2004. (Declaration of Peter J. Heck, Esq. ["Heck Decl."], Exhibit A) As part of the RSA, Provident Life agreed to pay a $15,000,000 fine. (*Id.*, A(4), p. 2) Provident Life was required to re-evaluate numerous claims and adhere to certain claim practices in perpetuity when evaluating ERISA claims. (*Id.*, C(10), iii)

It is clear that Provident Life did not follow any ERISA claim-procedure regulations – including those agreed to in the RSA – when it adjudicated Ms. Garrett's long-term disability claim. Provident Life has not produced any claim procedures that guided its consideration of the claim despite its agreement to do so in its discovery responses. (Heck Decl., Exhibit B) The absence of this evidence, as well as any facts that confirm Provident Life adhered to the claim review standards agreed to in the RSA, is an example of relevant and probative evidence that is necessary to ensure a full and fair review of Ms. Garrett's long-term disability claim.

## STATEMENT OF FACTS

Ms. Garrett contends that Provident Life improperly terminated the payment of long-term disability benefits under a policy of individual disability insurance, policy no. 337-000611700 (the "Policy.") Based upon the parties' agreement that Ms. Garrett's disability claim is governed by ERISA, the Court will review Provident Life's decision *de novo* at a bench trial. This brief will

not reiterate the substantive claims of the parties which were detailed in their respective summary judgment motions and the resulting ruling of the Court. Certain facts are emphasized herein because of the issues raised by Provident Life's *in limine* motion.[2]

Ms. Garrett's disability resulted from an automobile accident in November 2000. Provident Life paid long-term disability benefits pursuant to the Policy from March 21, 2001 until May 11, 2007. (R15, R1672-80) Thus, Provident Life concluded that, for a period of over six (6) years, Ms. Garrett's disabling medical conditions precluded her from performing the "material" and "substantial" duties of her pre-disability occupation as an office manager. (Db, p. 3; R186) Ms. Garrett's disabling medical conditions did not improve.

Nevertheless, Provident Life terminated Ms. Garrett's long-term disability benefits by letter dated May 11, 2007. (R1672-80) The letter made clear that Provident Life's reversal on Ms. Garrett's disability was primarily based on the review of surveillance video reviewed by in-house and defense medical consultants. (*Id.*; Db, p. 4) Despite this fact, Provident Life violated ERISA when it refused to produce any surveillance-related material to Ms. Garrett's predecessor counsel when he appealed the decision. The undisputed facts unquestionably demonstrate that Provident Life purposely withheld the surveillance materials before it issued its appeal decision on October 29, 2007. (R1766-73)

Provident Life did not acknowledge its ERISA failure until July 21, 2008, when it produced the surveillance material to predecessor counsel on the advice of in-house counsel. (R1780) Despite the clear breach of its fiduciary duties, it is undisputed that Provident Life never advised Ms. Garrett of her ERISA rights, which is particularly important since the Policy does not reference

---

2    Citations will reference Provident Life's claim file/administrative record submitted with the summary judgment motion.

ERISA and Ms. Garrett was never provided any ERISA-related documents, including a mandated Summary Plan Description ("SPD").  See 29 C.F.R. § 2520.102.  Indeed, Provident Life's claim file is devoid of any reference to ERISA or a participant's rights and remedies under the ERISA-governed plan in which Ms. Garrett participated.

Provident Life did not advise Ms. Garrett of her right to a full and fair review of her claim under ERISA nor did it encourage her to file an appeal after it advised her of its mistake.  Instead, Provident Life remained mute on Ms. Garrett's rights until Ms. Garrett was forced to file a lawsuit. Provident Life's lack of adherence to applicable claim regulations, bolstered by the RSA, is material and relevant to a full and fair bench trial.

For example, Provident Life agreed in the RSA to give "**significant weight to evidence of an award of Social Security Disability benefits as supporting a finding of disability**," unless:

> [Provident Life] ha[s] compelling evidence that the decision of the Social Security Administration was (i) founded on an error of law or an abuse of discretion, (ii) inconsistent with the applicable medical evidence, or (iii) inconsistent with the definition of disability contained in the applicable insurance policy.

(Heck Decl., Exhibit A, RSA (B)(2)(b)(3)) (emphasis added)  As previously noted, this obligation extended beyond the claim reassessment process and expiration of the RSA.

The record Provident Life proposes contains no information that Provident Life ever assessed the continued award of Social Security benefits to Ms. Garrett when it terminated her long-term disability benefits.  There is no information in the "administrative record" that Provident Life ever evaluated the decision of the Social Security Administration.  Instead, Provident Life unsuccessfully attempted to terminate these benefits based on its own biased determination.

A related consideration is Provident Life's decision to exponentially assess Ms. Garrett's physical capacity to work based on the limited activity depicted on the surveillance.  Provident

Life chose not to (1) consult with Ms. Garrett's counsel concerning her purported level of non-work activity on a short basis; or (2) conduct a Functional Capacity Exam ("FCE") to determine her actual work capacity as agreed to in the RSA.  (*Id.*, RSA (B)(3)(a)(c)):[3]

> <u>Changes in Claim Procedures</u>.  The Company's claim procedures shall include the following ongoing objectives:
>
> \* \* \*
>
> - Obtaining an Independent Medical Evaluation ("IME") or Functional Capacity Evaluation ("FCE") in appropriate circumstances and fairly interpreting or applying the IME or FCE, without any attempt to influence the impairment determinations of professionals conducting the IME and/or FCE.

Provident Life will undoubtably argue that it did obtain IMEs in deciding Ms. Garrett's claim.  As noted in Ms. Garrett's summary judgment papers, the "independent" orthopedic examination was performed by the same medical doctor who performed a defense medical examination for a different insurance company, several years earlier.  It was not "independent." In addition, both doctors premised their opinions on their respective review of the surveillance materials and Provident Life chose not to conduct an FCE.

The cold record Provident Life suggests for the bench trial does not address Ms. Garrett's physical work capacity.  Provident Life's fiduciary failures precluded Ms. Garrett from obtaining a contemporaneous FCE.  Thus, a review of medical records temporal with Provident Life's decisions (Heck Decl., Exhibit C), which Provident Life chose not to obtain or review, is necessary "additional evidence" that the Court should properly consider on Ms. Garrett's functional capacity

---

[3]     Provident Life' failure to produce a claim manual precludes a citation to its own practices concerning the "appropriate circumstances for an FCE."

at a bench trial. Provident Life created the need for such additional evidence based on the inadequate record resulting from its own wrongdoings.

## LEGAL ARGUMENT

### ADDITIONAL EVIDENCE IS NECESSARY AT THE BENCH TRIAL AND PROVIDENT LIFE'S MOTION SHOULD, THEREFORE, BE DENIED.

At the heart of the upcoming bench trial is the Court's obligation to ensure a full and fair review of competent material and relevant evidence to ensure a full and fair review of Provident Life's decision to terminate Ms. Garrett's long-term disability benefits and her entitlement to continued benefits. Provident Life never afforded Ms. Garrett that right and is in no position to limit the Court's review of evidence based on its fiduciary mistakes. The extent of the trial will be determined by the parties' pretrial submissions and the Court's determination on what it requires to make its decision.

### A.       The Court's *De Novo* Review

At the *de novo* bench trial, the Court will review "all aspects of Provident Life's claim decision, including all factual issues." Kinsler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 245 (2d Cir. 1999); McDonnell v. First Unum Life Ins. Co., 2013 U.S. Dist. LEXIS 110361, *37-38 (S.D.N.Y. Aug. 5, 2013). In conducting the *de novo* review, the "Court gives no deference to the insurer's interpretation of the plan documents, its analysis of the medical record, or its conclusion regarding the merits of plaintiff's benefit claim." McDonnell, 2013 U.S. Dist. LEXIS at *38 (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 112-13 (1989). The Court held that, in conducting such a review:

> The Court stands in the shoes of the original decisionmaker, interprets the terms of the benefits plan, determines the proper diagnostic criteria, reviews the medical evidence, and reaches its own conclusion about whether the plaintiff has shown, by a

preponderance of the evidence, that she is entitled to benefits under the plan.

McDonnell at *38 (citations and internal quotations omitted).

In Krolnick v. Prudential Insurance Company of America, 570 F.3d 841 (7th Cir. 2009), the Court described a *de novo* review as follows, based upon the Firestone decision:

> Firestone holds that '*de novo* review' is the norm in litigation under ERISA. Cases such as this show that '*de novo* review' is a misleading phrase. The law Latin could be replaced by an English word, such as 'independent.' And the word 'review' simply has to go. For what Firestone requires is not 'review' of any kind; it is an independent *decision* rather than 'review' that Firestone contemplates. The Court repeatedly wrote that litigation under ERISA by plan participants seeking benefits should be conducted just like contract litigation, for the plan and any insurance policy are contracts. 489 U.S. at 112-13. In a contract suit, the judge does not 'review' either party's decision. Instead, the court takes evidence (if there is a dispute about a material fact) and makes an independent decision about how the language of the contract applies to those facts.

Krolnick, 570 F.3d at 843; *see also* Stepanski v. Sun Microsystems, Inc., 2011 U.S. Dist. LEXIS 156127, *61 (D.N.J. Dec. 11, 2011) (a court's function in exercising *de novo* review is to use all available evidence to determine the empirically correct result, not to defer to the administrator's decision.) (quotations and citations omitted).

Again, Ms. Garrett does not suggest a trial without limitations. Instead, the bench trial should address the factual disputes identified by the parties and deemed necessary by the Court. Given the facts surrounding Provident Life's claim determination, good cause exists for the consideration of additional evidence when it conducts its *de novo* review. Provident Life concedes this fact by agreeing to the Court's consideration of documents it never reviewed.

**B.      Good Cause Exists to Consider Additional Evidence**

Provident Life argues that the Court should limit its review at the bench trial for this lawsuit to the administrative record. The argument is premised upon the well-established law in the

Second Circuit that Courts limit their review to the administrative record before the plan at the time it denied the claim, absent a showing of good cause. <u>DeFelice v. Am. Int'l Life Assurance Co.</u>, 112 F.3d 61, 66-67 (2d Cir. 1997); <u>Locher v. Unum Life Ins. Co. of Am.</u>, 389 F.3d 288, 294 (2d Cir. 2004); <u>Paese v. Hartford Life & Accident Ins. Co.</u>, 449 F.3d 435, 441 (2d Cir. 2006); <u>Halo v. Yale Health Plan, Dir. of Benefits & Records, Yale Univ.</u>, 819 F.3d 42, 60 (2d Cir. 2016). This rule of law, absent factual mooring to the facts of this case, is meaningless and does not confine the Court's *de novo* review.

The Court's decision in <u>Halo</u> is instructive. At issue in that case was defendant's failure to establish and follow reasonable claim procedures in accordance with DOL procedures established pursuant to ERISA. <u>Halo</u>, 819 F.3d at 46-48. The Court specifically held that an ERISA-governed plan's failure to follow or comply with DOL claim procedure regulation 29 <u>C.F.R.</u> § 2560.503-1 will result in the *de novo* review of the claim determination. *Id.*, at 46, 57-58.

More important, for purposes of the pending motion, the Court held as follows with respect to the scope of the *de novo* review in such circumstances:

> We now expand on <u>DeFelice</u> to hold that good cause to admit additional evidence may exist if the plan's failure to comply with the claims-procedure regulation adversely affected the development of the administrative record. Entitling a claimant to *de novo* review based on a plan's failure to comply with the claims-procedure regulation may be cold comfort if the plan's own compliance failures produced an inadequate administrative record that would prevent a full and fair hearing on the merits. *Cf.* <u>Hobson v. Metro. Life Ins. Co.</u>, 574 F.3d 75, 87 (2d Cir. 2009) ('[T]he purpose of ERISA's notice requirement is to 'provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts.'' (quoting <u>Juliano v. Health Maint. Org. of N.J., Inc.</u>, 221 F.3d 279, 287 (2d Cir.2000)). Accordingly, it is appropriate to allow the introduction of additional evidence if the plan's compliance failures adversely affected the development of the administrative record. Because the admission of such evidence based on good cause is a discretionary determination for the district

court, we leave it to the district court on remand to determine whether good cause exists here to admit additional evidence.

*Id.*, at 60.

It is undisputed that Provident Life violated 29 <u>C.F.R.</u> § 2560.503-1(g)(iii)(D) when it refused to produce surveillance material to Ms. Garrett's predecessor counsel before it affirmed its decision to terminate her long-term disability benefits on October 29, 2007.  This regulation provides:

> A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claimant's claim for benefits.  Whether a document, record or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section.

The surveillance material was relevant to Provident Life's claim determination.  It was referred to and relied upon by the in-house medical providers and the physicians who performed defense examinations when formulating their collective conclusions that Ms. Garrett was not totally disabled.  Provident Life's failure to abide by established claim procedure-regulation constitutes good cause for the Court to consider additional evidence at the bench trial.  This is particularly true where, as here, Provident Life sat on its mistake and did nothing to rectify it until after Ms. Garrett filed her lawsuit, four (4) years later.

More generally, good cause exists for the admission of additional evidence is justified in circumstances when an ERISA plan administrator has no written procedures for claim review. <u>Locher</u>, *supra*, 389 F.3d at 296.  The Court in <u>Locher</u> specifically held:

> Where sufficient procedures for initial or appellate review of a claim are lacking, there exist greater opportunities for conflicts of interest to be exacerbated and, in such a case, the fairness of the ERISA appeals process cannot be established using only the record before the administrator. In such circumstances, as we stated in <u>DeFelice</u>, the district court may assume an active role in order to ensure a comprehensive and impartial review of the case. Accordingly, the

10

District Court did not err in considering evidence outside the administrative record.

*Id.* (citing <u>DeFelice</u>, 112 F.3d at 66)

Based on the above, the Court approved the District Court's consideration of additional information, including the report of a doctor Plaintiff retained after litigation was commenced, over seven (7) years after her claim was denied. *Id.*, at 296-97. The Court reasoned that "…upon *de novo* review, a district court may render a determination on a claim without deferring to an administrator's evaluation of the evidence." *Id.* (citing <u>Connors v. Conn. Gen. Life Ins. Co.</u>, 272 F.3d 127, 135 (2d Cir. 2001) (noting that, upon *de novo* review, a District Court is "free to evaluate [a treating physician's] opinion in the context of any factors it considered relevant, such as the length and nature of their relationship, the level of the doctor's expertise, and the compatibility of the opinion with the other evidence.")) The Court is "free" to similarly evaluate such medical testimony at the bench trial.

If the Court were to adopt Provident Life's argument, there would be no claim procedures in the record for consideration at the bench trial. Provident Life has refused to produce any claim procedures in this lawsuit. As previously noted, the Policy issued to Ms. Garrett does not reference ERISA. It is also undisputed that Provident Life never provided Ms. Garrett with a SPD as required by ERISA. 29 <u>C.F.R.</u> § 2520.102. The SPD must contain information concerning procedures applicable to evaluate the claim and appeal procedures. *See* <u>Gosselin v. Sheet Metal Workers National Pension Fund</u>, 2017 U.S. Dist. LEXIS 123413 (E.D.N.Y. Aug. 4, 2017) ("For example, the Second Circuit finds that good cause exists [to consider additional evidence] when the procedures employed in arriving at the claim determination are flawed….")

The absence of established claim procedure was determined to constitute good cause for the admission of additional evidence by the Court in <u>Lijoi v. Continental Cas. Co.</u>, 414 F. Supp. 2d 228 (E.D.N.Y. 2006).  There, the Court aptly reasoned:

> Additionally, the Court notes that Continental has identified no written procedures for handling and evaluating claims.  How, for example, does Continental access conflicting medical testimony, as that of Dr. Neophytides and Dr. Head, and why does it consider Dr. Neophytides' isolated evaluation of Lijoi more credible than the ongoing reports of Dr. Head and the multiple other doctors who evaluated Lijoi?  On what basis did Continental credit its own FCE, while finding Lijoi's vocational assessment to be lacking in objective medical findings?  On what basis, if any, is a claimant allowed to supply additional medical evidence to reopen his administrative file after an appeal becomes final?  These deficiencies in procedural clarity are certainly as extensive as those on which the court found 'good cause' in <u>DeFelice</u> and <u>Locher</u>, and justify a wider inquiry by the Court to insure a comprehensive and impartial review of Lijoi's claim.  The Court finds that Lijoi has made a sufficient showing of good cause to warrant the admission of additional evidence into the Court's review.

<u>Lijoi</u>, 414 F. Supp. 2d at 241.  Based upon this reasoning, the Court permitted additional medical evidence concerning Plaintiff's continued disability.  *Id.*  The same is true with respect to Ms. Garrett.  The Court should consider similar evidence at the bench trial.  (*See*, e.g., 2015 Submission; Heck Decl., Exhibit C)  Such additional evidence is necessary to answer questions similar to those raised by the <u>Lijoi</u> Court.

Good cause for the admission of additional evidence based on the lack of any written claim procedures is further highlighted by the RSA Provident Life entered into less than three (3) years before it terminated Ms. Garrett's long-term disability benefits.  (Heck Decl., Exhibit A)  Based on the claim procedures mandated by the Agreement in perpetuity, various factual issues must be addressed at the bench trial, including (1) whether Provident Life fairly interpreted information from Ms. Garrett's attending physicians; (2) why Provident Life chose not to discuss the

12

surveillance and Ms. Garrett's restrictions and limitations with her attending physicians; and (3) why Provident Life chose not to perform a Functional Capacity Examination of Ms. Garrett instead of simply assuming functional capacity from its jaded review of surveillance materials.

Even more disconcerting is that portion of the RSA that required Provident Life to give "significant weight" to evidence of an award of Social Security disability benefits. It is undisputed that, in connection with its review of Ms. Garrett's claim, Provident Life not only ignored the award of these benefits but attempted to have the benefits terminated based on the surveillance. As noted in Ms. Garrett's summary judgment submission, Provident Life's efforts failed.

The relevance of Ms. Garrett's continued entitlement to Social Security benefits is evidence, despite its providing surveillance material and a significant issue that the Court can properly consider on *de novo* review. *See, e.g.*, Alexander v. Winthrop, Stimson, Putnam & Roberts, LLP, 497 F. Supp. 2d 429 (E.D.N.Y. 2007).[4]  In Alexander, the Court considered additional evidence as part of its paper bench trial. In particular, the Court held as follows with respect to Social Security Administration ALJ decisions:

> Though not binding on this Court, the findings of the Social Security Administration ("SSA") ALJ who granted plaintiff's application for Social Security benefits also constitute evidence substantiating plaintiff's claim to suffer from severe, chronic lower back pain. *See* Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 442 (2d Cir. 2006) ('The court acted well within its discretion when it considered the SSA's findings as some evidence of total disability, even though they were not binding on the ERISA Plan, and even though the SSA's definition of disability may differ from that in the [Plan].')

Alexander, 497 F. Supp. 2d at 436. Ms. Garrett has similarly submitted such evidence, both before and after Provident Life made its claim determinations that it purposely chose to ignore. Plaintiff

---

[4]     Provident Life cites this case in its *in limine* motion.

concedes that the <u>Alexander</u> Court did consider testimony given the written documentation before it.  Nothing in the opinion, however, itself precludes testimony if deemed necessary to adjudicate the claim.

Provident Life relies on a number of decisions in its *in limine* motion that refute, rather than support, the relief sought.  For example, there is no inequality between evidence on a *de novo* review.  (Db., p. 10) (citing <u>Richard v. Fleet Financial Group, Inc. Ltd. Employee Benefits Plan</u>, 367 F. App'x 230 (2d Cir. 2010).[5]  In <u>Richard</u>, the Court affirmed a ruling of summary judgment in favor of the defendant disability insurer.  Its decision, however, was made under the arbitrary and capricious standard of review.  <u>Richard</u>, 367 Fed. App'x at 232.  This rule does not apply to cases reviewed under the *de novo* standard of review nor has Provident Life cited any legal support for this rule.  The same is true with respect to Provident Life's reliance on <u>Wedge v. Shawmut Design & Construction Group Long Term Disability Insurance Plan</u>, 23 F. Supp. 3d 320 (S.D.N.Y. 2014) ("[The] termination of Plaintiff's LTD benefits must be reviewed under an arbitrary and capricious standard…[t]his standard of review is narrow.")  *See also* <u>Miller v. United Welfare Fund</u>, 72 F.3d 1066, 1076 (2d Cir. 1995) (District Court erred on an arbitrary and capricious review by considering extrinsic evidence at bench trial).

Provident Life's reliance on <u>Napoli v. First Unum Life Ins. Co.</u>, 78 Fed. App'x 787 (2d Cir. 2003) is also unavailing.  The Second Circuit reversed the entry of summary judgment because of the existence of disputed material facts.  <u>Napoli</u>, 78 Fed. App'x at 789.  While the Court suggested a different rubric than summary judgment for conducting a paper review, such consideration became irrelevant on remand.  While First Unum's motion was under consideration, the Second

---

[5]     Provident Life does not appropriately cite this case as a Summary Order.

Circuit "clarified" the standard to be applied when deciding to expand the administrative record. Napoli, 2005 U.S. Dist. LEXIS 1018, *4 (S.D.N.Y. Jan. 25, 2005) (referring to Locher, *supra*).

Based on the Locher decision, the District Court, on remand, invited additional briefing on the issue of good cause to consider evidence outside the administrative record.[6] Napoli, 2005 U.S. Dist. at *4.  Based upon the supplemental briefing, the Court specifically held:

> While the Court of Appeals apparently considered that this issue could be resolved on the cold record, it appears to this trier of fact that the most effective way to make that determination is the old-fashioned way: by hearing the testimony of each witness in person, subject to cross-examination.  Without attempting to consider what 'good cause' may mean in other contexts, it is clear to this Court that, at least under these circumstances in which the Court faces a limited remand to determine a credibility issue, the conflict of interest on the part of the administrator and the fact that the Court of Appeals had already approved the expansion of the record to include an affidavit from the treating physician together constitute good cause under Locher to hear live testimony.

*Id.*, at 10-11.  The Court did not squarely address this issue, raised by Provident Life's motion – what constitutes good cause to consider additional evidence at a bench trial.  The Court did note when commenting on the Locher decision:

> While the Court ruled that the 'trier of fact *may* decline to consider any evidence that has not already been considered,' *id.*, it certainly did not hold that the Court *may not* consider such evidence.  Here, the record has already been expanded to include an affidavit by Dr. Freilich that was not part of the administrative record, and the issue has been posed for decision as to which doctor's opinion more accurately describes plaintiff's medical condition and ability to return to work.

*Id.* (emphasis in original)  Thus, under less egregious circumstances than those present in this case, the Court recognized the need to rely upon additional evidence in conducting a *de novo* review bench trial.

_____

[6]      Prior to appeal, the Court had permitted supplementation of the administrative record to include the affidavit of Dr. Freilich.  Napoli, 2005 U.S. Dist. at *2.

Provident Life relies heavily upon the Court's opinion in <u>Krizek v. Cigna Group Ins.</u>, 345 F.3d 91 (2d Cir. 2003), in support of the *in limine* motion.  (Db., pp. 5-6)  However, the Court never addressed the scope of review issue.  <u>Krizek</u>, 345 F.3d at 99, n.4 ("We do not decide today whether the conflict alleged on appeal by Krizek would constitute 'good cause' to expand the record if it had been argued below.")  This issue was remanded, although the Court did hold that the District Court did not abuse its discretion by ultimately limiting its review to the administrative record before the plan administrator.  *Id.*

This decision, alone, does not control the bench trial in this lawsuit.  The case law Provident Life relies upon is distinguishable.  The cases are factually inapposite because the plaintiffs in those cases were not denied their ERISA right to submit documents contemporaneous with the claim process based upon Defendant's willful disregard of ERISA.  Provident Life cannot and does not cite case law that supports the proposition that such fiduciary mistakes during the claim process limit the District Court's scope of review at a bench trial.

Ms. Garrett does not dispute the <u>Krizek</u> Court's holding that it would be more "prudent" and "judicially efficient" to resolve the good cause issue before the bench trial, so that the parties and the Court can properly deem what disputed issues of material fact, including credibility, must be addressed at the bench trial.  That should be the sole decision made when deciding Provident Life's motion.  Provident Life should not be able to only compel Ms. Garrett to provide this information.  The development of these issues should proceed by Pretrial Order, as contemplated by the rules of Court and Your Honor's Individual Practice Rules.

By way of example, Ms. Garrett would seek to call Mark Freidlich, M.D., the Board Certified radiologist who interpreted the cervical and lumbar MRIs performed on Ms. Garrett on December 29, 2000 (R79, 81)  Dr. Freidlich diagnosed both cervical and lumbar limitations based

upon his review of the original MRI films.  Provident Life paid benefits based upon Dr. Freidlich's interpretation of these films.  Years later, Provident Life denied benefits based upon two defense doctors it retained to examine Ms. Garrett and review copies of these films.  Both doctors opined that Dr. Freidlich over-read the films and that no cervical or lumbar herniations were depicted.  This dispute between the opinions of medical professionals is the proper subject for a bench trial based upon the Court's disposition of the parties' cross-motions for summary judgment.

Ms. Garrett concedes that, to successfully oppose Provident Life's motion, she must demonstrate good cause to expand the evidence beyond the administrative record for consideration at the bench trial.  She has met that burden.  She does not have to identify the additional information at this juncture.  Nevertheless, Provident Life's claim file, the documents contained in the 2005 submission and the documents submitted in opposition to Provident Life's motion, constitute the documentary evidence Ms. Garrett seeks to rely upon at the bench trial.

Provident Life's argument to limit documents to be considered at the bench trial is also contradicted by the Court's decision in Tretola v. First Unum Life Insurance Company, 2015 U.S. Dist. LEXIS *14666 (S.D.N.Y. Feb. 6, 2015).  There, plaintiff was provided with the opportunity to submit all evidence necessary to refute the bases of the disability insurer's claim determination.  Tretola, 2015 U.S. Dist. at 43-44.  The Court denied the parties' cross-motions for summary judgment based on the conclusion that a "material issue of fact [existed] on the issue of whether [plaintiff's medical condition] rendered her disabled" on the date the insurer made its claim determination.  *Id.*, 68-69.

Prior to the bench trial, the Court permitted the plaintiff's counsel to submit medical information that was previously not produced to defendant.[7]  *Id.*, at 69.  The Court went on to explain this holding and the bench trial as follows:

> This case will now proceed to a bench trial on the issues left open by this decision. *See* DeFelice, 112 F.3d at 64-65. As discussed above, the Court directs Tretola's counsel to produce <u>forthwith, and in all events within two weeks of this decision</u> -- i.e., by February 20, 2015 -- to First Unum and the Court, <u>all</u> outstanding medical records that First Unum requested prior to or during Tretola's appeal of First Unum's decision to terminate Tretola's long-term disability benefits, but which were not produced. (For avoidance of doubt, these records are limited to records that existed as of the time of First Unum's request for such materials.) These may be produced pursuant to a confidentiality order. Counsel for Tretola is advised that the deadline in this paragraph will not be extended.
>
> The Court further directs the parties to appear for a conference on March 11, 2015, at 11 a.m. At that conference, the Court will set a trial date and deadlines for the various pretrial submissions called for by the Court's individual rules. *See* http://www.nysd. uscourts.gov/ judge/Engelmayer. Counsel are advised that trial likely will be held in June or July 2015.
>
> The Court further directs that, by February 27, 2015, lead counsel for Tretola and First Unum meet and confer to discuss the upcoming trial in detail, with the goal of identifying the witnesses that each party intends to call at trial, the substance and the anticipated length of each witnesses' testimony, any anticipated pretrial motions, and any other issues that may require pretrial resolution.

*Id.*, at 81 (footnote omitted)

Provident Life's erroneous argument that Ms. Garrett has failed to provide a legitimate reason for not submitting the additional evidence sought to be considered is legally and factually without merit.  (Db., pp. 9-10)  First, Provident Life cites to a case that applied the arbitrary and capricious standard of review.  Baird v. Prudential Ins. Co. of Am., 2010 U.S. Dist. LEXIS 100941,*29-30 (S.D.N.Y. Sept. 24, 2010), *aff'd*, 458 Fed. App'x 39, 40 (2d Cir. 2012) (Summary

---

[7]      Provident Life did not request any medical information in its discovery requests.

Order) (applying arbitrary and capricious standard of review).  There, Provident Life concedes that the *de novo* standard of review applies.

Moreover, Provident Life ignores the fact that it did not permit Ms. Garrett to submit any evidence given its admitted ERISA violation when it rendered is claim and appeal determinations. In addition, Provident Life refused to review Ms. Garrett's submission after the lawsuit was commenced.  Contrary to Provident Life's contention, Ms. Garrett was not given the opportunity to "correct" any document submission issue as part of the post-litigation remand.  The remand was agreed to because of Provident Life's fiduciary mistakes.

By arguing that the inclusion of the documents Ms. Garrett compiled in 2015 should be considered at a bench trial, Provident Life concedes the inadequacy of the administrative record. Provident Life's counsel, for legal reasons, chose not to allow Provident Life to review the documents.  As such, Provident Life contradicts its own argument.  Provident Life is well aware that the argument fails because Ms. Garrett was deprived of the opportunity to a full and fair ERISA review.  Daniel v. UnumProvident Corp., 2008 U.S. App. LEXIS 1396, *5 (2d Cir. Jan. 24, 2008) (Summary Order) (ERISA's concern of resolving disputes inexpensively and expeditiously "is not implicated in cases where the extraneous evidence being offered goes to a question that was not, or could not have been, under consideration by the plan administrator.") *See also* Locher, 389 F.3d at 294-95 (ERISA considerations of District Court not becoming substitute claim administrator not appliable where good cause exists to expand administrative record.)

Provident Life's motion seeks to improperly solely blame Ms. Garrett for the delays associated with a claim determination.  This is not true and substantial delays resulted from Provident Life and its counsel's decisions.  The blame game is not relevant to the upcoming bench trial.  Provident Life admits that it suffered no prejudice based on any delay based on its willingness

to permit this evidence at the bench trial.  More importantly, Ms. Garrett has demonstrated beyond mere conjecture or speculation that Provident Life's claim file is inadequate to conduct a proper review of Provident Life's administrative decision.  *Cf.* Hotaling v. Teachers Ins. & Annuity Ass'n of Am., 62 F. Supp. 2d 731, 738 (N.D.N.Y. 1999).

## CONCLUSION

Based on the foregoing, additional evidence is required for the bench trial and Provident Life's motion should be denied.

**NIEDWESKE BARBER LLC**
Attorneys for Plaintiff


By:   s/ Peter John Heck
         Peter J. Heck


Dated:  January 15, 2021