UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
Denise Garrett,

                          Plaintiff,

                -against-                    **MEMORANDUM & ORDER**
                                                 11-CV-00133 (DG) (PK)

Provident Life and Casualty Insurance Company,
*n/k/a Unumprovident, Inc.*; John Does 1-5; and
ABC Corporations 1-5,

                        Defendants.
---------------------------------------------------------------X
DIANE GUJARATI, United States District Judge:

      This case arises from the termination of Plaintiff Denise Garrett's long-term disability benefits by Defendant Provident Life and Casualty Insurance Company ("Provident") after video surveillance allegedly showed Garrett engaging in activities inconsistent with past reports about her functional capacity. Pending before the Court is Provident's motion *in limine* seeking to preclude from admission into evidence at trial certain evidence that Garrett did not submit to Provident during previous administrative proceedings. *See* Motion, ECF No. 65; Defendant's Brief in Support of Motion ("Def. Br."), ECF No. 65-1; Defendant's Reply in Support of Motion ("Def. Reply Br."), ECF No. 66.

      Because Garrett has failed to demonstrate "good cause" for expanding the record beyond what was previously introduced during administrative proceedings – including on remand in 2016 – the Court grants Provident's Motion to the extent set forth below.

## BACKGROUND

**I.    Relevant Factual Background**

      Provident issued a policy of individual disability income insurance to Garrett effective April 1, 1995. *See* Plaintiff's Local Civil Rule 56.1 Statement ("Pl. 56.1") ¶ 5, ECF No. 47-3.

In November 2000, Garrett was involved in a car accident that allegedly caused her to suffer physical incapacitation such that she was "totally disabled." *See* Pl. 56.1 ¶¶ 13-14; *see also* Defendant's Local Civil Rule 56.1 Statement ("Def. 56.1") ¶ 4, ECF No. 50. In March 2001, after Garrett filed a long-term disability claim, *see* Pl. 56.1 ¶ 14, Provident approved Garrett's claim and started paying her $3,450 monthly, Pl. 56.1 ¶ 24. In May 2007, after Provident's investigator obtained surveillance video allegedly demonstrating Garrett moving without apparent signs of impairment or difficulty, Provident terminated Garrett's long-term disability benefits. *See* Pl. 56.1 ¶ 135. The May 2007 termination letter notified Garrett of her right to appeal the termination, Def. 56.1 ¶ 125, but Provident did not, at that time, provide to Garrett its surveillance video or investigatory reports, *see* Pl. 56.1 ¶¶ 137-38.

In July 2007, Garrett's counsel requested the surveillance and investigatory materials from Provident, but Provident responded that Garrett was not entitled to the requested materials. Pl. 56.1 ¶ 139. Garrett's counsel did not provide additional medical evidence or argument regarding her claim, Def. 56.1 ¶ 127, but appealed "under protest," Pl. 56.1 ¶ 140. In October 2007, Provident notified Garrett that it had completed its review and was upholding its termination of her benefits. Def. 56.1 ¶ 135. However, in July 2008, Provident sent Garrett's counsel the entire claim file including all surveillance material, acknowledging that Garrett's claim "may be governed by ERISA." Pl. 56.1 ¶ 143; *see* 29 C.F.R. § 2560.503-1(g)(1)(vii)(D) (entitling the claimant, after an adverse disability benefits determination, "to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits").

## II.  Relevant Procedural History

On August 5, 2010, Garrett commenced this action against defendants Provident, John Does 1-5, and ABC Corporations 1-5 in New York Supreme Court, Kings County, challenging,

under New York law, Provident's termination of her disability benefits. *See* Complaint, ECF No. 1 at 12-14.[1] On December 13, 2010, Provident answered the Complaint and asserted, *inter alia*, that Garrett's claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. *See* Answer, ECF No. 1 at 16, 19. Provident then removed the action to this Court on January 10, 2011. *See* Notice of Removal, ECF No. 1 at 1-4. On March 14, 2011, the parties filed a joint stipulation to administrative remand. ECF No. 4. The stipulation provided, *inter alia*, that "Provident agrees to conduct an additional administrative review of its determination terminating [Garrett's] benefits under the Policy, specifically for the purpose of allowing [Garrett] to introduce argument and evidence regarding the surveillance videos and investigatory materials," and that "*[p]romptly after the entry of this stipulation*, [Garrett] shall provide to Provident, in writing, the argument and/or evidence that she desires Provident to consider on the Remand." *Id.* at 2 (emphasis added). On March 15, 2011, the stipulation was so-ordered by the Court and the case was administratively closed without prejudice to any party's right to reopen upon letter request within 30 days of the disposition of the administrative remand. ECF No. 5.

On July 28, 2016 – more than five years after the parties entered into the stipulation – Garrett submitted additional evidence to Provident for its consideration. Begos Decl. Ex. A, ECF No. 49. Provident refused to conduct an additional administrative review because Garrett had failed to "promptly" introduce additional evidence. *Id.* Ex. B (letter noting that "Provident ha[d] no obligation to conduct an additional administrative review" because Garrett did "not compl[y] with the terms of" the stipulation given that a delay of five years cannot be considered

---

[1] Citations to the Complaint, Answer, and Notice of Removal are to the ECF pagination, rather than the internal document pagination.

3

"prompt"). Garrett sought to reopen this action on August 22, 2016, *see* ECF No. 7, and the case was reopened on August 26, 2016. Following the close of discovery, the parties cross-moved for summary judgment on June 7, 2019. ECF Nos. 47-55. The Court denied those motions on May 22, 2020. ECF No. 56. After the parties attempted private mediation, Provident moved – on consent – to stay the deadline to file the Joint Pretrial Order until after the Court resolved Provident's anticipated motion *in limine*. *See* ECF No. 59 at 1-2. On August 17, 2020, the Court granted the motion to stay. The case was reassigned to the undersigned on January 14, 2021.

### III.    The Instant Motion

On January 26, 2021, Provident filed the instant Motion. ECF No. 65. Provident does not object to the Court considering at trial all evidence that Garrett submitted on administrative remand in July 2016. Def. Br. at 2 n.1, 4. However, Provident seeks to preclude Garrett from offering any testimonial evidence at trial and any documentary evidence that she failed to submit in the administrative proceedings, either initially or on remand. *See id.* at 2. Garrett opposed the Motion, *see* Plaintiff's Brief in Opposition ("Pl. Br."), ECF No. 64, and attached to her brief extra-record documents that she sought to have the Court consider at trial, *see* ECF No. 64-4.[2]

A conference on the Motion was held on February 22, 2021. Because Garrett's briefing was ambiguous regarding the specific testimony and extra-record documents she sought to introduce at trial, *see, e.g.*, Pl. Br. at 2 ("The Court should be free to evaluate all relevant evidence deemed necessary to provide Ms. Garrett with a full and fair review of her disability

---

[2] The attached documents included: (1) 22 separate consultation reports, dated December 2004 through December 2009; (2) a September 25, 2009 orthopedic examination report by Dr. Louis Tranese; (3) a cervical MRI report dated December 2, 2011; (4) a lumbar MRI report dated December 6, 2011; and (5) a December 8, 2011 EMG test report by Dr. Ranga Krishna. *See* ECF No. 64-4.

4

claim."); *id.* at 17 ("[Garrett] does not have to identify the additional information at this juncture."); *id.* at 16 ("*By way of example*, Ms. Garrett would seek to call Mark Freilich, M.D. . . . ." (emphasis added)), the Court "directed the parties to supplement their briefs *to clarify* what evidence that was not contained in the administrative record (as supplemented in 2016) is being sought to be admitted at trial and, with respect to each piece of evidence, the good cause for allowing such admission," February 22, 2021 Order, ECF No. 67 (emphasis added). A briefing schedule was set under which Garrett would file her supplemental briefing by March 8, 2021 and Provident would file its supplemental briefing by March 15, 2021. February 22, 2021 Order.

On March 8, 2021, Garrett submitted her supplemental brief, listing 18 extra-record documents she sought to introduce at trial, *see* Plaintiff's Supplemental Brief ("Pl. Supp. Br.") at 1-2, ECF No. 68, including a December 23, 2011 consultation report by Dr. Sebastian Lattuga that she had not previously referenced or attached to her motion papers. *Compare* ECF No. 68 at A1-A3, *with* ECF No. 64-4.[3] In her supplemental brief, Garrett also asked the Court to take judicial notice of "the claim procedures mandated in the Regulatory Settlement Agreement." Pl. Supp. Br. at 5.[4]

On March 15, 2021, Provident filed its supplemental brief. *See* Defendant's Supplemental Brief ("Def. Supp. Br."), ECF No. 69. In that supplemental brief, Provident

---

[3] Garrett also attached to her supplemental opposition brief three consultation reports by Dr. Krishna, dated June 3, 2007, September 7, 2008, and January 28, 2009, respectively, which she did not attach to her initial opposition brief, and which she failed to discuss in her supplemental brief. *See* ECF No. 68 at 1-5, C1-C8.

[4] The Regulatory Settlement Agreement appears to be an agreement between Provident's affiliated company, Unum Life Insurance Company of America, and various state and federal regulators. *See* ECF No. 64-2.

opposed the admission of all 18 documents identified in Garrett's supplemental brief, *id.* at 1-4, reiterated that Provident sought to preclude witness testimony at trial, *id.* at 1, opposed Garrett's request that the Court take judicial notice of the Regulatory Settlement Agreement because the proffered version was unsigned and, in any event, is not the type of document as to which the Court may take judicial notice, *id.* at 4,[5] and, for the first time, affirmatively asked the Court to admit at trial "certain evidence bearing on the credibility of [Garrett] and her primary treating doctor, Dr. Krishna," *id.*

On March 16, 2021, in response to Provident's supplemental brief, Garrett submitted a letter, arguing that Provident had "unilateral[ly] expan[ded] the *in limine* issues before the Court," and requesting a telephone conference "to address all *in limine* motions and their consideration." ECF No. 70 at 1. In the letter, Garrett further argued, *inter alia*, that "[g]iven the evidence that [Provident] now seeks to introduce, the testimony of Ms. Garrett and Dr. Krishna is necessary." *Id.* at 2.

On March 18, 2021, Provident submitted a letter in response to Garrett's March 16, 2021 letter. ECF No. 71. In its letter, Provident indicated that it did not object to Garrett's request for a conference "if the Court believes a conference would be productive." *Id.* at 1. However, Provident sought to have the conference limited to giving Garrett an opportunity to respond to Provident's identification of three exhibits it "might seek to introduce at trial," and Provident requested that the Court decline to consider Garrett's March 16, 2021 letter to the extent that Garrett "seeks to use it as a reply in further support of the evidence she identified in her

---

[5] In addition, Provident argued that "[t]o the extent [Garrett] contends the Court should consider evidence about [Provident's] claim procedures, it is the actual claim procedures [that] would be relevant," but noted that Provident did "not concede that any claim procedures are relevant to the issues in this case." Def. Supp. Br. at 4.

6

[Supplemental Brief]." *Id.*

The Court has determined that a conference is not necessary to resolve the pending Motion.

## IV. Scope of the Instant Motion

The record reflects disagreement between – and perhaps confusion by – the parties as to the scope of the instant Motion. The parties appear to have different views on what Garrett is and is not seeking to admit into evidence at trial. *See, e.g.*, Def. Supp. Br. at 1, 4-5. Moreover, Provident's supplemental brief indicates – for the first time – that Provident itself affirmatively seeks expansion of the administrative record through admission of three exhibits at trial. *See id.* at 4-5. Provident's initial briefing on the instant Motion had indicated only that Provident might seek to expand the record *if* Garrett were successful in her own efforts to expand the record beyond her submissions on remand in 2016. *See* Def. Br. at 1-3 & n.2 ("If and to the extent that the Court allows admission of testimony and/or extra-Record documentary evidence, Provident Life reserves the right to introduce such evidence in support of its defense as is appropriate."). And Provident's most recent submission characterizes the three extra-record exhibits only as evidence that Provident "might seek to introduce at trial." ECF No. 71.

The Court considers herein only Garrett's explicit request to admit at trial the 18 items referenced in her supplemental brief and the testimony of Dr. Mark Freilich, as well as her apparent request to admit at trial various other documents referenced in, or attached to, her brief and supplemental brief. As discussed further below, before the Court will entertain any request for relief related to claims procedures that may be at issue in this case, any governing claims procedures – whether adopted by Provident or mandated by third-party agreement – should be produced by Provident to Garrett. If Provident seeks to preclude consideration of such claims

7

procedures at trial, it shall move *in limine* after the filing of the Joint Pretrial Order in this matter.

## DISCUSSION

Garrett argues that the Court should consider evidence outside the administrative record as supplemented in July 2016. *See* Pl. Supp. Br at 1. Garrett explicitly seeks to introduce: (1) 14 examination reports by Dr. Ranga Krishna, dated between April 2006 and December 2009;[6] (2) a cervical MRI report dated December 2, 2011; (3) a lumbar MRI report dated December 6, 2011; (4) a December 8, 2011 EMG test report by Dr. Krishna; (5) a December 23, 2011 consultation report by Dr. Sebastian Lattuga; and (6) testimony from one radiologist, Dr. Mark Freilich. *See id*. at 1-2 (listing documents), A1-A29 (attaching documents);[7] Pl. Br. at 16-17 (discussing testimony).

For the reasons set forth below, the Court concludes that Garrett has not met her burden

---

[6] Exhibit C to Garrett's initial opposition brief also included seven near-identical examination reports by Dr. Krishna, dated between December 2004 and December 2005, and an eighth report dated September 5, 2008. *See* ECF No. 64-4. Because Garrett failed to identify or discuss these documents in her supplemental brief as directed by the Court, *see* February 22, 2021 Order, Garrett has abandoned her argument that such documents should be introduced at trial. *See, e.g.*, *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) ("Even '[w]here abandonment by a counseled party is not explicit,' a court may infer abandonment 'from the papers and circumstances viewed as a whole.'" (quoting *Jackson*, 766 F.3d at 196)); *Robinson v. Am. Int'l Grp., Inc.*, No. 08-CV-01724, 2009 WL 3154312, at *4 & n.65 (S.D.N.Y. Sept. 30, 2009) (collecting cases), *aff'd*, 396 F. App'x 781 (2d Cir. 2010); *EEOC v. United Health Programs of Am., Inc.*, No. 14-CV-03673, 2017 WL 10088567, at *7 n.9 (E.D.N.Y. Sept. 4, 2017). In any event, for the same reasons that follow, the Court finds that there is no "good cause" to consider these extra-record documents at trial. Such documents shall not be included in the parties' Joint Pretrial Order.

[7] As noted above, *see supra* note 3, Garrett also attached to her supplemental opposition brief three consultation reports by Dr. Krishna, dated June 3, 2007, September 7, 2008, and January 28, 2009, respectively, but failed to discuss the documents in her briefing. *See* Pl. Supp. Br. at 1-5, C1-C8. In any event, for the same reasons that follow, the Court finds that there is no "good cause" to consider this extra-record evidence. Such documents shall not be included in the parties' Joint Pretrial Order.

of establishing "good cause" to admit her proffered extra-record evidence at trial.

I.      Applicable Law

Under ERISA, a beneficiary of a long-term disability plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "Where an ERISA plan does not accord an administrator 'discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' a district court reviews all aspects of an administrator's eligibility determination, including fact issues, *de novo*." *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 293 (2d Cir. 2004) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).[8] However, this review "is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence." *DeFelice v. Am. Int'l Life Assur. Co.*, 112 F.3d 61, 67 (2d Cir. 1997); *see also Halo v. Yale Health Plan*, 819 F.3d 42, 60 (2d Cir. 2016) (noting that, in reviewing claim denials, "district courts typically limit their review to the administrative record before the plan at the time it denied the claim"). A district court has the discretion to admit additional evidence, but that "discretion ought not to be exercised in the absence of good cause." *DeFelice*, 112 F.3d at 66; *see also Krizek v. Cigna Grp. Ins.*, 345 F.3d 91, 97 (2d Cir. 2003). The claimant bears the "burden to allege facts, with sufficient specificity, that would support the existence of 'good cause' permitting the admission of additional evidence beyond the administrative record." *Krizek*, 345 F.3d at 97-98 & n.2.[9]

---

[8] The parties agree – and the Court previously concluded – that the ERISA plan here does not confer such discretionary authority on Provident and, accordingly, that the *de novo* standard applies. *See* ECF No. 56 at 23.

[9] The limited *de novo* review in this context prevents district courts from becoming "substitute plan administrators." *See DeFelice*, 112 F.3d at 65-66. Such a judicial role would undermine

9

Although the United States Court of Appeals for the Second Circuit has not specifically defined "good cause" in this context, it has identified such cause in a number of instances. In *DeFelice*, for example, the Second Circuit found good cause where, in a factual interpretation case like this one, there was a "demonstrated conflict of interest in the administrative reviewing body," "no established criteria for determining an appeal," and the reviewing body "apparently had a practice of destroying or discarding all records within minutes after hearing an appeal." *DeFelice*, 112 F.3d at 65-67; *accord Locher*, 389 F.3d at 294, 296 (holding that "a conflicted administrator does not *per se* constitute good cause" and clarifying that *DeFelice* based its "holding not only on a demonstrated conflict of interest, but also upon the procedural problems with the plan administrator's appeals process"). In *Paese v. Hartford Life & Accident Insurance Company*, the Second Circuit affirmed the district court's finding that "good cause existed for the admission of [a medical] report because it was highly probative and written by a disinterested party who had actually examined [the plaintiff], and because *[the plaintiff] was not at fault* for the report's initial absence from the record." 449 F.3d 435, 441 (2d Cir. 2006) (emphasis added). In *Juliano v. Health Maintenance Organization of New Jersey, Inc.*, the Second Circuit held that "good cause" for admitting evidence outside the administrative record existed where the plan administrator's claimed reason for denying a claim was not stated in its notices to the claimant. 221 F.3d 279, 289 (2d Cir. 2000). And in *Halo*, the Second Circuit held that "good cause to admit additional evidence may exist if the plan's failure to comply with the claims-

---

the primary goals of ERISA "'to promote the interests of employees and their beneficiaries in employee benefit plans,' 'to protect contractually defined benefits,' and 'to maintain the premium costs of [an ERISA] system at a reasonable level.'" *Locher*, 389 F.3d at 295 (alteration in original) (quoting *Firestone*, 489 U.S. at 113; then 29 U.S.C. § 1001b(c)(5)); *see also id.* (noting "the significant ERISA policy interests of minimizing costs of claim disputes and ensuring prompt claims-resolution procedures").

10

procedure regulation adversely affected the development of the administrative record." 819 F.3d at 60.

The Second Circuit has held, however, that "good cause" does not exist where the claimant has been given "ample time to submit additional materials" into the administrative record but the claimant fails to do so, and where the additional materials are duplicative of record evidence. *See Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125-26 (2d Cir. 2003); *see also Sanford v. TIAA-CREF Individual & Institutional Servs., LLC*, 612 F. App'x 17, 19 (2d Cir. 2015) (no good cause where claimant never submitted the records at issue "despite having possession of them and despite having several months to submit the information").

## II. Garrett Has Failed to Demonstrate Good Cause to Expand the Administrative Record

In support of her claim that "good cause" exists for the Court to expand the record beyond what was previously introduced during administrative proceedings – including on remand in 2016 – Garrett presses several arguments, none of which is persuasive.

As an initial matter, Garrett argues that the Court should "be free to evaluate *all relevant evidence* deemed necessary to provide [her] with a full and fair review of her disability claim." Pl. Br. at 2 (emphasis added). Provident argues in response that the evidence the Court considers at trial "must be admissible, meaning that it is either part of the Administrative Record, or agreed to be an exhibit by both parties, or there is good cause to admit it." Def. Reply Br. at 9. Because "[t]rial de novo on new evidence would be inconsistent with reviewing the administrator's decision about whether to grant the benefit," *Muller*, 341 F.3d at 125 (alteration in original) (quoting *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094 (9th Cir. 1999) (en banc)), the Court is not, in fact, free to expand the record without limitation. Garrett must demonstrate the requisite "good cause" for expansion of the record.

11

Garrett principally argues that she should be permitted to introduce additional evidence because Provident's failure to comply with ERISA's claims-procedure regulations affected the development of the administrative record. *See* Pl. Br. at 9-10. However, although any such non-compliance may have adversely impacted Garrett's ability to develop the record *initially*, *see Halo*, 819 F.3d at 60, the parties stipulated to an administrative remand in 2011 in order to afford Garrett an opportunity to remedy any deficiencies in the record, *see* ECF No. 4. The administrative record was further developed in 2016 when Garrett proffered additional evidence, and Provident has conceded that the Court should consider that additional evidence at trial. *See* Def. Br. at 2 n.1, 4. Garrett argues, in conclusory fashion, that Provident's decision to decline to conduct an additional administrative review and to request medical records in discovery after she submitted the new evidence in 2016 "perpetuated the existence of an inadequate administrative record." Pl. Supp. Br. at 3. However, Garrett has not demonstrated that any action by Provident kept her – in 2016 – from introducing the extra-record evidence she now seeks to introduce at trial. Nothing impeded her ability, for example, to introduce testimony in 2016 from Dr. Freilich, the radiologist who prepared her MRI report in December 2000, *see* Def. 56.1 ¶ 14, or Dr. Krishna, her treating physician as early as December 2004, *see* ECF No. 64-4 at 2.

Garrett also argues that "good cause" exists to allow the admission at trial of the extra-record documents because "Garrett and her counsel thought [the medical records] were destroyed by Superstorm Sandy." Pl. Supp. Br. at 2; *see also id.* ("The remainder of the documents were unexpectedly located after . . . August 4, 2020 . . . ."); Garrett Decl., ECF No. 68-1, ¶¶ 3-6 (stating that Garrett "had forgotten about" medical records in her mother's house). However, where a claimant has possession of, and access to, the relevant documents and ample time to submit them but fails to do so, no good cause exists for later admitting them at trial. *See Muller*,

12

341 F.3d at 125-26; *see also Sanford*, 612 F. App'x at 19.  Moreover, the parties stipulated to remand on March 14, 2011 and Hurricane Sandy did not arrive in New York until October 29, 2012 – more than 19 months later.  Garrett, without explanation, failed to "promptly" submit the additional evidence at issue here to Provident as required by the parties' stipulation and, in fact, failed to submit *any* documents within this 19-month period.

Garrett further argues that "[t]he additional medical records are necessary for [her] to carry her burden of proof" at trial.  Pl. Supp. Br. at 4.  Even if true, however, that alone would not provide the requisite "good cause" for the admission of the extra-record evidence.  *See Donlick v. Standard Ins. Co.*, 726 F. App'x 12, 16 (2d Cir. 2018) (rejecting argument that the strength of the extra-record evidence is itself enough to constitute good cause for its admission).

Finally, Garrett argues that where, as here, the district court considers documents outside the administrative record at the summary judgment stage, there is good cause for similar consideration at a bench trial.  Pl. Supp. Br. at 2.  Provident's failure to object to the Court's consideration of extra-record documents at summary judgment does not, however, constitute good cause for the Court to consider those documents at trial.  The cases within this Circuit cited by Garrett are not to the contrary.  *Napoli v. First Unum Life Insurance Company*, No. 99-CV-01329, 2005 WL 167598, at *3 (S.D.N.Y. Jan. 25, 2005), stands for the uncontroversial principle that a district court *may* consider extra-record evidence where there is good cause, and *Locher*, 389 F.3d at 293-96, and *Lijoi v. Continental Casualty Company*, 414 F. Supp. 2d 228, 240-41 (E.D.N.Y. 2006), involve clear examples of good cause because, in those cases, there was a conflict of interest in the claim administration as well as procedural infirmities in the appeals process.  None of these cases, however, discusses whether – let alone holds that – a

court's consideration of extra-record documents at the summary judgment stage constitutes *per se* good cause to consider those and other extra-record documents at trial.

In sum, the parties stipulated to an administrative remand in March 2011 that allowed Garrett to submit argument and evidence that had not previously been submitted during the initial administrative proceedings. Garrett waited *more than five years* after entering into that stipulation before submitting any additional evidence and, even then, failed to submit the evidence at issue now, despite having possession of, and access to, the extra-record documents and the opportunity to proffer the testimony of potential witnesses like Dr. Freilich who had treated Garrett years earlier.[10] Garrett has failed to carry her burden of demonstrating that "good cause" exists for the Court to consider at trial the testimony of Dr. Freilich, the 18 items of documentary evidence proffered by Garrett in her supplemental brief, or the myriad medical records attached to her briefing without discussion. *See Muller*, 341 F.3d at 125-26; *see also Sanford*, 612 F. App'x at 19. Provident's Motion is therefore granted to the extent that it seeks to preclude this testimony and documentary evidence at trial.

## III. The Claims Procedures

The parties disagree over whether Provident produced its claim procedures to Garrett during discovery. *Compare* Pl. Br. at 3 ("Provident Life has not produced any claim procedures that guided its consideration of the claim despite its agreement to do so in its discovery responses."), *with* Def. Reply Br. at 6 ("It is [Provident's] understanding that the [Benefits Center Claims] Manual was produced to [Garrett] on compact disc . . . . Certainly, Provident Life is willing to provide a replacement copy of the Manual if [Garrett] requires it."). The

---

[10] Garrett's counsel has indicated that his "serious medical condition" resulted in the "*the delay* of the remand submission." Pl. Supp. Br. at 3 n.2 (emphasis added). He does not, however, proffer this as a reason for *the failure* to submit in 2016 the specific evidence at issue here.

14

parties also appear to disagree about the relevance, if any, of Provident's claims procedures, and, as noted above, disagree about the relevance and admissibility of the Regulatory Settlement Agreement. *Compare, e.g.*, Def. Supp. Br. at 4, *with* Pl. Br. at 11-14, *and* Pl. Supp. Br. at 5. The Court does not herein resolve these disputes but will consider any properly raised motion *in limine* on these issues that is filed after any claims procedures – whether adopted by Provident or mandated by third-party agreement – have been produced/re-produced to Garrett and after the Joint Pretrial Order is submitted. Provident is DIRECTED to provide such materials – including the Benefits Center Claims Manual and the Regulatory Settlement Agreement – to Garrett by May 21, 2021.

## CONCLUSION

Provident's Motion, ECF No. 65, is GRANTED to the extent that it seeks to preclude admission at trial of (1) the testimony of Dr. Freilich; (2) the 18 documentary items specified in Garrett's supplemental brief; and (3) any additional documents that Garrett referenced or attached to her brief or supplemental brief, excluding the Benefits Center Claims Manual and the Regulatory Settlement Agreement. The Motion is otherwise DENIED without prejudice to renewal.

The parties shall submit a Joint Pretrial Order by June 21, 2021.

SO ORDERED.

*/s/ Diane Gujarati*
DIANE GUJARATI
United States District Judge

Dated: May 14, 2021
Brooklyn, New York